UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDMON D.,<br>　　　　Plaintiff,<br>　　v.<br>LELAND DUDEK, Acting Commissioner,<br>　　　　Defendant. | Case No. 3:24-cv-08983-JSC<br><br>**ORDER RE: SOCIAL SECURITY APPEAL**<br><br>Re: Dkt. Nos. 13, 19 |

Plaintiff seeks social security benefits for a combination of mental and physical impairments including vertigo, arthritis, traumatic brain injury (TBI), PTSD, depression anxiety, back and knee pain, and high blood pressure. (Administrative Record ("AR") 102.) Pursuant to 42 U.S.C. § 405(g), Plaintiff filed this lawsuit for judicial review of the final decision by the Commissioner of Social Security denying his benefits claim. After careful consideration of the parties' briefing, the Court concludes oral argument is unnecessary, *see* N.D. Cal. Civ. L.R. 7-1(b), and AFFIRMS the Commissioner's decision.

**BACKGROUND**

**A.    Procedural History**

Pursuant to the Social Security Act, on March 23, 2022, the claimant protectively filed a Title II application for a period of disability and disability insurance benefits alleging disability beginning June 13, 2021. (AR 17.) Plaintiff's application was denied initially and on reconsideration. (AR 78-96.) Plaintiff submitted a timely request for a hearing before an Administrative Law Judge (ALJ). (AR 123.) A hearing was held on April 3, 2024, where Plaintiff and a vocational expert testified. (AR 36-62.) On August 16, 2024, the ALJ issued an unfavorable decision finding Plaintiff was not disabled within the meaning of the Social Security

1   Act. (AR 17-29.)

2         Plaintiff filed a timely request for review with the Appeals Council, which the Appeals

3   Council denied. (AR 1-3.) Plaintiff thereafter filed the underlying action. In accordance with Civil

4   Local Rule 16-5, the parties filed cross briefs on appeal. (Dkt. Nos. 13, 19.[1])

    **B.**    **Issues for Review**

        1.  Did the ALJ err in evaluating the medical evidence?

        2.  Did the ALJ fail to reconcile her mental findings at step two and step three with the Residual Functional Capacity (RFC)?

**LEGAL STANDARD**

A claimant is considered "disabled" under the Act if he meets two requirements. *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). First, the claimant must demonstrate "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Second, the impairment or impairments must be severe enough he is unable to do his previous work and cannot, based on his age, education, and work experience, "engage in any other kind of substantial gainful work which exists in the national economy." *Id*. § 423(d)(2)(A). To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, examining: (1) whether the claimant is engaging in "substantial gainful activity"; (2) whether the claimant has a "severe medically determinable physical or mental impairment" or combination of impairments that has lasted for more than 12 months; (3) whether the impairment "meets or equals" one of the listings in the regulations; (4) whether, given the claimant's RFC, he can still do his "past relevant work"; and (5) whether the claimant "can make an adjustment to other work." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012), superseded by regulation on other grounds; *see* 20 C.F.R. § 404.1520(a).

//

---

[1] Record Citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the document.

**DISCUSSION**

**I.  MEDICAL OPINION EVIDENCE**

Under the regulations that apply to Plaintiff's application, the Commissioner no longer gives specific evidentiary weight to medical opinions, including the deference formerly given to the opinions of treating physicians. Instead, the Commissioner evaluates the "persuasiveness" of all medical opinions in the record based on: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c; *see also Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022).

Supportability and consistency are the most important factors in evaluating the persuasiveness of medical opinions. *See Woods*, 32 F.4th at 791 (citing 20 C.F.R. § 404.1520c(a)). "Supportability means the extent to which a medical source supports the medical opinion by explaining the relevant objective medical evidence." *Id*. at 791-92 (cleaned up) (citing 20 C.F.R. § 404.1520c(c)(1)). "Consistency means the extent to which a medical opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." *Id*. at 792 (cleaned up) (citing 20 C.F.R. § 404.1520c(c)(2)). The third factor—"relationship with the claimant"—encompasses "the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed, ... and whether the medical source has examined the claimant or merely reviewed the claimant's records." *Id*. at 792 (citing 20 C.F. R. § 404.1520c(c)(3)(i)–(v)). The ALJ must explain how she considered supportability and consistency, and may, but is not required, to explain how she considered factors three, four, and five. *See Woods*, 32 F.4th at 792; *see also* 20 C.F.R. § 404.1520c(b)(2).

An "ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792 (cleaned up). "The agency must articulate how persuasive it finds all of the medical opinions and explain how it considered the supportability and consistency factors in reaching these findings." *Id*. (cleaned up) (citing 20 C.F.R. §§ 404.1520c(b), 404.1520c(b)(2)).

3

**A.     Dr. Sharma**

The ALJ found consultative internist Dr. Sharma's opinion persuasive except as to his opinion limiting Plaintiff to sitting and standing only two hours in an eight-hour workday. (AR 28.) The ALJ noted this limitation was "supported by the gait and range of motion findings on his own examination" but it was "not consistent with the treatment record, including lack of continued physical examination findings, despite other treatment and lack of even subjective knee complaints." (AR 28.) The ALJ elaborated:

> As discussed above, even though the claimant walked with a limp at this time, he demonstrated full (5/5) motor strength throughout all 4 extremities, and he was not using a cane or other assistive device (Ex. 2F). Then as subsequent physical examinations continued to find full (5/5) strength with no atrophy and intact sensation etc. (Ex. 3F, p. 63), and the claimant's gait was unremarkable at the second C.E. (Ex. 4F). The 2 hours stand/walk limit opinion is also inconsistent with the claimant's reported walking activity around the same time. It is not persuasive.

(AR 28.)

Plaintiff contends the ALJ erred by failing to address the supportability factor and explain how Dr. Sharma's opinion was not supported. While the ALJ only used the terms "supported" and "consistent" once, the substance of her discussion includes an analysis of each according to the regulations. For the supportability factor "the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). In contrast, for the consistency factor, the "more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."

The ALJ discussed both here. She found the objective medical evidence—Plaintiff's subsequent physical examinations—did not support Dr. Sharma's findings. And the ALJ stated the reasons proffered by Dr. Sharma—Plaintiff's gait and Dr. Sharma's physical exam—did not fully support the stand/walk limitation because Plaintiff did not use a cane or other assistive device and portions of his exam demonstrated full strength. Accordingly, substantial evidence supports

4

1  the ALJ's finding regarding Dr. Sharma's opinion as to the limitation on Plaintiff's standing and
2  walking.

3  **B.     Dr. Kim**

4  Next, Plaintiff challenges the ALJ's finding that the opinion of the consultative
5  psychologist Dr. Kim "of moderate and even marked mental limitations, is not persuasive"
6  because the findings are "not well-supported and not consistent with the overall medical evidence
7  as a whole." (AR 28.)  The ALJ explained:

> Dr. Kim's opinion is somewhat supported by her onetime/ snapshot examination findings, including her memory, calculation, and mood findings, but the marked and even moderate limitations are not supported by her own MMSE findings and his observed memory on evaluation. Moreover, it is not consistent with the lack of continued treatment, despite access to care and is not consistent with the minimal mental status evaluation findings outside of this examination within less than a year of onset. He had no positive cognitive findings and after early 2022, no noted difficulty interacting with others. He travels and interacts with family. As DDS noted at reconsideration, he reported increased stressors around this time, which is particularly relevant given the improved mental status evaluation findings in mid-2022 and no further treatment after this exam.

15 (AR 28.)  Plaintiff insists the ALJ "mischaracterized" Dr. Kim's report and "inaccurately
16 suggested that the limitations are belied by observed memory on evaluation." (Dkt. No. 13 at 21-
17 22.)
18      Dr. Kim opined Plaintiff was markedly impaired in the areas of interacting with others,
19 maintaining concentration and attention, and his ability to adapt to the usual stressors; and Plaintiff
20 was moderately impaired in his ability to perform activities in a normal schedule, maintain regular
21 attendance, and complete a normal workday or workweek.  (AR 627.)  Plaintiff concedes the Mini
22 Mental State Examination (MMSE) reflected only mild impairments in Plaintiff's cognitive
23 functioning, but nonetheless argues Dr. Kim's findings as to Plaintiff's moderate and marked
24 limitations are supported by Dr. Kim's "documented [] clinical observations that both Plaintiff's
25 attention and his memory were markedly impaired."  (Dkt. No. 13 at 22 (citing AR 623, 625).)
26 However, Dr. Kim's findings regarding Plaintiff's memory were contradictory.  On the one hand,
27 she indicated he was "Markedly impaired" in his memory, but she also noted his "recent/remote
28 memory seemed to be intact" as shown below:

5

> Memory:    Markedly impaired.
>            Recalled 3 out of three items immediately and 0 of three words after a 5-minute delay with interference. The items are: "apple, penny, table."
>            During interview, recent/remote memory seemed to be intact.

(AR 624.) "The ALJ is responsible for resolving conflicts in the medical record." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). Substantial evidence thus supports the ALJ's finding that Dr. Kim's observations regarding Plaintiff's memory do not support her limitations.

Significantly, Plaintiff does not challenge the other reasons the ALJ offered to find Dr. Kim's opinion unpersuasive. Namely, that Dr. Kim's limitations were not supported by the record including "no positive cognitive findings" and "no noted difficulty interacting with others" after early 2022 (when he had gotten into an altercation with an Uber driver). (AR 28.) The ALJ also relied on Plaintiff's travels and interaction with family. (AR 28.) These uncontested reasons are also substantial evidence supporting the ALJ's finding. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) ("in light of all the other reasons given by the ALJ for Batson's lack of credibility and his residual functional capacity, and in light of the objective medical evidence on which the ALJ relied, there was substantial evidence supporting the ALJ's decision.").

Given Plaintiff's failure to address the ALJ's additional reasons for finding Dr. Kim's opinion unpersuasive, and the internal inconsistencies within Dr. Kim's opinion regarding Plaintiff's memory, substantial evidence supports the ALJ's findings as to the persuasiveness of Dr. Kim's opinion.

## II. CONSIDERATION OF MENTAL LIMITATIONS IN THE RFC FINDING

Lastly, Plaintiff argues the ALJ erred by finding Plaintiff had various "mild" mental limitations at step two and three using the Psychiatric Review Technique ("PRT"), but failing to consider those limitations in formulating the RFC.

At steps two and three, the ALJ discussed the four broad functional areas known as the "paragraph B" criteria for evaluating mental disorders. *See* 20 CFR § 404.1520a. These criteria include: (1) understanding, remembering, and applying information; (2) interacting with others;

6

(3) concentrating, persisting or maintaining pace; and (4) adapting or managing oneself.[2]  The ALJ discussed each criteria in detail and concluded:

> Because the claimant's medically determinable mental impairments cause no more than "mild" limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, they are nonsevere. (20 CFR 404.1520a(d)(1)).

(AR 23-24.)

Plaintiff insists because the ALJ found mild limitations in all four areas of basic mental functioning at steps two and three, but did not include any mental limitations in the RFC, and "this discrepancy was not explained, [] the RFC adopted by the ALJ is flawed." (Dkt. No. 13 at 24.) But Plaintiff makes no argument as to what limitation the ALJ failed to impose.  Nor does Plaintiff identify any evidence that supports a mental work-related limitation beyond Dr. Kim's opinion. But, as discussed above, substantial evidence supports the ALJ's finding that Dr. Kim's opinion was not persuasive.  Plaintiff also does not challenge the ALJ's finding that Plaintiff's "lack of regular and continuing treatment or even consistent 12-months of mental status evaluation findings," and "full range of activities of daily living" including back and forth to Guam did not support more than a minimal or mild limitation.  (AR 22.)

Plaintiff's reliance on *Hutton v. Astrue*, 491 F. App'x 850 (9th Cir. 2012), is misplaced.  In *Hutton*, the ALJ determined at step two that the plaintiffs' PTSD caused mild limitations in one of the four broad paragraph B functional areas of concentration, persistence, or pace and was not severe.  *Id*. at 850.  Then, in determining his RFC, the ALJ excluded the plaintiff's PTSD from consideration finding the claimant lacked credibility and that "his PTSD claims were in 'great doubt.'" *Id*. at 850-51. The Ninth Circuit held that this constituted reversible error.  "[W]hile ALJ was free to reject Hutton's testimony as not credible, there was no reason for the ALJ to disregard his own finding that Hutton's nonsevere PTSD caused some 'mild' limitations in the areas of concentration, persistence, or pace." *Id*. at 851.

Here, in contrast, the ALJ considered the totality of the evidence in setting the RFC and as

---

[2] Soc. Sec. Admin., Listing Criteria 12.00E, https://www.ssa.gov/disability/professionals/bluebook/12.00-MentalDisorders-Adult.htm#12_00E.

7

to his mental limitations the ALJ noted his mental health treatment was "short-lived," he evidenced "improved mental status evaluation," and "[h]e had no positive cognitive findings and after early 2022, no noted difficulty interacting with others." (AR 27-28.) Plaintiff's reliance on *Anna C. v. O'Malley*, 734 F. Supp. 3d 1123, 1130 (D. Or. 2024), is likewise unavailing. There, unlike here, the district court found the ALJ erred in failing to properly assess and reject the medical opinion testimony regarding the plaintiff's mental impairment. *Id.* at 1131.[3] There is no such error here.

      Plaintiff's argument is essentially that the ALJ must repeat her step two/three PRT analysis at step four and cannot use the language as the ALJ did here that "[t]he following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." (AR 24.) While some courts have concluded a similar statement incorporating the ALJ's step two analysis into the RFC determination is an "empty boilerplate statement[]" *see, e.g., Carlson v. Berryhill*, No. 18-cv-03107-LB, 2019 WL 1116241. at *17 (N.D. Cal. Mar. 10, 2019), that was not the case here. Rather, the ALJ's detailed discussion of Plaintiff's mental impairments before incorporating her step two analysis into the subsequent RFC assessment satisfied the ALJ's duty to "consider all [] medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,'" in formulating the RFC. 20 C.F.R. § 416.945(a)(2); *see also D.L.P. v. Kijakazi*, No. 21-CV-00792-VKD, 2022 WL 4472064, at *4 (N.D. Cal. Sept. 26, 2022) ("given the detailed discussion that precedes the ALJ's statement incorporating his step two analysis into the subsequent RFC assessment, the Court finds that this statement was not mere boilerplate, and that the ALJ did

---

[3] Plaintiff also relies on *Christopher J. v. Colvin*, but that opinion has since been reversed. *See Christopher J. v. Colvin* No. 24-CV-349-GPC (MSB), 2025 WL 26153, at *6 (S.D. Cal. Jan. 2, 2025), report and recommendation adopted in part, rejected in part sub nom., 2025 WL 926457 (S.D. Cal. Mar. 27, 2025). Notably, in declining to adopt the report and recommendation, the district court noted "the relevant inquiry into an ALJ's translation of the moderate limitations found in paragraph B to a functional limitation in the RFC is whether the RFC limitations are supported by medical evidence." 2025 WL 967123, at *11 (citing *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) ("[A]n ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence or pace where the assessment is consistent with restrictions identified in the medical testimony."); *Israel v. Astrue*, 494 F. App'x 794, 796 (9th Cir. 2012) (ALJ properly translated moderate limitations into concrete restriction in RFC by drawing on restrictions identified in the medical testimony)).

8

consider D.L.P.'s non-severe mental impairments in formulating his RFC" and collecting similar cases).

## CONCLUSION

For the reasons set forth above, the Court AFFIRMS the Commissioner's decision. Separate judgment will follow.

This Order disposes of Docket Nos. 13, 19.

**IT IS SO ORDERED.**

Dated: July 21, 2025

JACQUELINE SCOTT CORLEY
United States District Judge